UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                Case No.

APPROXIMATELY $9,000.00 IN UNITED
STATES CURRENCY,

      Defendant.

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorneys, Richard G. Frohling, United States Attorney for the Eastern District of Wisconsin, and Bridget J. Schoenborn, Assistant United States Attorney for this district, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### Nature of the Action

1. This is a civil action to forfeit property to the United States of America, under 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. § 841(a)(1).

### The Defendant In Rem

2. The defendant property, approximately $9,000.00 in United States currency, was seized on or about May 1, 2021, from Jayson Morales and B.M. at 1XXX S. 112th Street, West Allis, Wisconsin.

3. The defendant property is presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

6. Venue is proper in this district under 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for Forfeiture

7. The defendant property, approximately $9,000.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

## Facts

8. Marijuana is a Schedule I controlled substance under 21 U.S.C. § 812.

9. Cocaine is a Schedule II controlled substance under 21 U.S.C. § 812.

10. On or about June 26, 2006, Jayson Morales was found guilty due to a no contest plea to two felony counts in Milwaukee County Circuit Court Case No. 05CF7035.

11. Since on or about June 26, 2006, Jayson Morales has been, and remains, a convicted felon.

12. As a convicted felon, Jayson Morales is prohibited from possessing a firearm.

**February 2021 investigation into Jayson Morales's drug trafficking activities**

13. In February 2021, Drug Enforcement Administration ("DEA") agents identified Jayson Morales of West Allis, Wisconsin, as a large-scale marijuana dealer through a Title III wiretap investigation in Springfield, Missouri, into a drug trafficking organization ("DTO").

14. One of the DTO's drug dealers, an individual having the initials C.R., was a target in DEA Springfield's investigation.[1]

15. Phone conversations between C.R. and Jayson Morales revealed that Morales was attempting to purchase about 250 pounds of marijuana from C.R.

16. February 12 and 13, 2021 phone conversations between C.R. and Jayson Morales included the following:

    A. C.R. asked, in coded conversation, whether Morales sold marijuana. C.R. told Morales that C.R. could give it to Morales for "four" ($400 per pound). C.R. agreed to send Morales pictures of the marijuana via Instagram.

    B. C.R. and Morales discussed the quality and smell of the marijuana.

    C. C.R. agreed to have the marijuana delivered to Morales so that Morales would not have to travel to Chicago to pick it up.

    D. Morales asked C.R. how many Morales could get. C.R. replied "1000." Morales asked for 200 (pounds), and C.R. agreed to set up the transaction.

    E. C.R. asked Morales if Morales would be able to store product (marijuana), and Morales stated that he could store it.

17. February 16, 2021 phone conversations between C.R. and Jayson Morales included the following:

    A. C.R. told Morales that the marijuana would be delivered to Morales but that Morales would need "to take 500" (pounds). Morales became nervous of Morales's ability to sell that much marijuana because Morales did not know the quality of the product. They discussed needing one to two weeks to sell a large quantity.

---

[1] C.R. was charged in a superseding indictment on March 23, 2021, in the Western District of Missouri with, among other things, violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846.

3

      B.      Morales asked C.R. if the price was "$400," but C.R. stated it would be $450 per pound. They discussed selling it at $600 to $650 per pound and that C.R. and Morales could split the profits.

      C.      Morales also asked C.R. about being able to buy "girl" (cocaine). C.R. told Morales that they would talk about that in person when C.R. comes to meet Morales.

      D.      C.R. asked Morales if Morales would have $5,000 to pay the courier of the marijuana load.

      E.      C.R. confirmed to Morales that the courier would be bringing "300" (pounds of marijuana).

18. February 17, 2021 phone conversations between C.R. and Jayson Morales included the following:

      A.      C.R. told Morales that the courier was driving a U-Haul-type box truck and there would be "50 pieces times 5" (50 bundles at five pounds per bundle, or 250 pounds of marijuana).

      B.      C.R. and Morales discussed at length the concerns of needing a place to unload the large delivery. Morales stated that Morales had a 2019 Chevy Silverado truck with a cover.

      C.      Morales confirmed to C.R. that the (Penske) truckload had arrived. Morales and C.R. discussed that Morales would receive 40 to 50 bundles of the marijuana and that each bundle was about five pounds.

      D.      Morales, C.R., and the courier all spoke. They discussed the fact that the (marijuana) load was too large to put in Morales's truck.

      E.      Morales told C.R. that there was around 500 (pounds of marijuana) in the truck, which was also filled with limes.

      F.      Morales helped the courier check into a hotel.[2]

19. February 18, 2021 phone conversations between C.R. and Jayson Morales included the following:

---

[2] Agents confirmed that the Penske truck was parked for two days at the Embassy Motel in Franklin, Wisconsin. Motel records showed payment of the motel room for February 17 and 18, 2021, and the courier listed "Penske" as the make of his vehicle.

      A.      Morales told C.R. that Morales had withdrawn $2,500 from the bank to pay the courier.

      B.      C.R. told Morales there were 275 bundles (about five pounds of marijuana each) on the truck.

      C.      Morales told C.R. that Morales had unloaded "like 40" of the bundles already and was attempting to sell them. Morales indicated that the bundles were 5.5 pounds each.

      D.      C.R. asked Morales to store the remaining marijuana for an unidentified individual (a supplier) and told Morales that Morales would get paid to do so.[3] Morales agreed to do so.

20.    Jayson Morales and the courier then moved the Penske truck to a different motel, the Plaza Motel in Franklin, Wisconsin.

21.    February 19, 2021 phone conversations between C.R. and Jayson Morales included the following:

      A.      Morales told C.R. that Morales was moving samples (of the marijuana) to people and that Morales had already checked on the truckload that morning.

      B.      Morales and C.R. discussed that the remaining marijuana load would be going to Atlanta on February 20, 2021.

      C.      Morales again asked C.R. to set up a supplier to bring "girl" (cocaine). Morales stated that Morales could sell them for 45 and they would make 25 and 25. If the supplier brought three or four, they would make good money.

**February 20, 2021 surveillance of Jayson Morales and seizure of about 1,323 pounds of marijuana**

22.    On February 20, 2021, agents conducted surveillance at Jayson Morales's residence and saw Morales leave in his Chevy Silverado truck. Agents followed Morales to the Plaza Motel in Franklin. The Penske box truck was in the motel's parking lot.

---

[3] C.R. told Morales they needed to finish this deal up because that same supplier could hook them up with the "F" and the "Girl" (fentanyl and cocaine).

5

Case 2:22-cv-00118-WED   Filed 01/31/22   Page 5 of 11   Document 1

23. Jayson Morales entered the lobby of the Plaza Motel, returned to his Chevy truck, and drove his truck over to, and parked next to, the Penske truck. Morales then walked around the Penske truck, appearing to confirm that the Penske truck was secure, and left the area in his Chevy truck.

24. After Jayson Morales drove away, agents went into the Plaza Motel and spoke with the motel owner. The motel owner stated the following:

    A. Jayson Morales had just paid cash for an additional night at the motel (Room 16). Morales told the owner that the room was for his friend who had gotten drunk and would be staying another night.

    B. The Penske truck in the motel's parking lot was from the person staying in Room 16.[4]

25. The motel owner gave agents permission to have a drug dog check the Penske truck. A drug detection dog gave a positive alert to the odor of a controlled substance on the rear cargo area of the Penske truck.

26. Agents attempted to speak with the individual staying in Room 16 at the Plaza Motel, but no one was present in the room.

27. Agents forcibly opened the lock on the rear of the Penske truck. The truck was filled with numerous pallets of limes. Upon opening some of the packages, agents found marijuana inside each package. The limes were spoiled and were only being used as a cover load for the marijuana.

28. The Penske truck was towed to the Oak Creek Police Department for processing.

29. A total of approximately 238 bundles of marijuana were located inside the Penske truck. After all layers of wrapping had been removed, the marijuana weighed about 2,525 grams per bundle, for a total of about 600,950 grams or 1,323.67 pounds.

---

[4] The motel's registration card for Room 16 listed the "Penske Van."

30. Based on all the foregoing – most specifically paragraphs 19, 21, and 29 – and the investigation to date, agents believe that on or about February 18, 2021, Jayson Morales took possession of approximately 220 pounds of marijuana from the Penske truckload (approximately 40 bundles at about 5.5 pounds each) and then distributed that marijuana.

31. Furthermore, based on their training and experience, and the investigation to date, agents believe that Jayson Morales also distributed cocaine.

**May 1, 2021 execution of search warrant at Jayson Morales's residence**

32. On May 1, 2021, the West Allis Police Department ("WAPD") issued an alert regarding a shooting in their jurisdiction and asked for help identifying the shooting suspect. DEA agents recognized the suspect in the photos as Jayson Morales from agents' February 2021 drug investigation. Agents informed the WAPD that Jayson Morales was the shooting suspect.

33. On May 1, 2021, WAPD officers conducted a traffic stop on Jayson Morales and arrested him. Morales was in the same 2019 Chevy Silverado truck that he used during the February 2021 drug investigation.

34. At the time of his arrest, Jayson Morales had $1,523.67 on his person. That money is not part of the defendant currency.

35. Officers then executed a search warrant at Jayson Morales's residence, 1XXX S. 112th Street, West Allis, Wisconsin (the "Residence"), where he lived with his wife, B.M., and two minor children.

36. B.M. and several minor children were inside the Residence when officers arrived and executed the search warrant.

37. On May 1, 2021, the below items, among other things, were inside the Residence.

   A. In the kitchen were the following:

        i.      Various ammunition, an empty firearm magazine, and a semi-automatic firearm loaded with nine rounds;

        ii.     A total of approximately 0.81 grams of cocaine and approximately 16.55 grams of crack cocaine; and

        iii.    Four jewelry items valued at approximately $20,560.

    B.     In a spare bedroom were two loaded firearm magazines.

    C.     In the master bedroom were the following:

        i.      Various ammunition, and

        ii.     Approximately $9,000.00 in United States currency inside a safe.

    D.     In the basement were the following:

        i.      A digital scale,

        ii.     An empty firearm magazine, and

        iii.    A total of approximately 16.74 grams of unknown substances in baggies.

**May 1, 2021 statement by Jayson Morales's wife, B.M.**

38.     On May 1, 2021, officers spoke with Jayson Morales's wife, B.M., at the Residence.

39.     B.M. denied knowledge of the cocaine inside the Residence.

40.     B.M. denied knowledge of the approximately $9,000 in United States currency inside the safe and stated that Jayson Morales is the only person who had access to the safe.

41.     B.M. stated that the jewelry found in the kitchen belonged to Jayson Morales.

### Administrative Forfeiture Proceedings

42.     The Drug Enforcement Administration ("DEA") began administrative forfeiture proceedings against the approximately $9,000.00 in United States currency on the ground that

the seized currency was used or intended to be used in exchange for controlled substances or was proceeds of trafficking in controlled substances.

43. On or about November 12, 2021, Jayson Morales filed a claim with the DEA in the administrative forfeiture proceedings to the approximately $9,000.00 in United States currency.

**Warrant for Arrest In Rem**

44. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

**Claims for Relief**

45. The plaintiff alleges and incorporates by reference the paragraphs above.

46. By the foregoing and other acts, the defendant property, approximately $9,000.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

47. The defendant approximately $9,000.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property, approximately $9,000.00 in United States currency, be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2022.

            Respectfully submitted,

            RICHARD G. FROHLING
            United States Attorney

By: *s/BRIDGET J. SCHOENBORN*
   BRIDGET J. SCHOENBORN
   Assistant United States Attorney
   Wisconsin Bar Number: 105396
   Attorney for Plaintiff
   Office of the United States Attorney
   Eastern District of Wisconsin
   517 East Wisconsin Avenue, Room 530
   Milwaukee, WI 53202
   Telephone: (414) 297-1700
   Fax: (414) 297-1738
   E-Mail: bridget.schoenborn@usdoj.gov

## Verification

I, Jason Baranek, hereby verify and declare under penalty of perjury that I am Task Force Officer with the Drug Enforcement Administration (DEA) in Milwaukee, that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 41 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge and information are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 01/29/2022

s/JASON BARANEK
Jason Baranek
Task Force Officer
Drug Enforcement Administration